IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

DAVID MICHAEL HARMON, JR.,　　　}
TDCJ-CID NO. 1220692,　　　　　　}
　　　　　　　Petitioner,　　　　}
v.　　　　　　　　　　　　　　　}　　CIVIL ACTION NO. G-07-0149
　　　　　　　　　　　　　　　　}
NATHANIEL QUARTERMAN,　　　　　}
　　　　　　　Respondent.　　　　}

OPINION ON DISMISSAL

　　　　　Petitioner David Michael Harmon, Jr., an inmate incarcerated in the Texas Department of Criminal Justice – Correctional Institutions Division ('TDCJ-CID'), has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his underlying conviction for aggravated robbery (Docket Entry No.1) and a memorandum in support of the petition. (Docket Entry No.2).   Respondent has filed a motion for summary judgment, arguing that petitioner is not entitled to habeas corpus relief under § 2254.  (Docket Entry No.15).  Petitioner has filed a response to the motion.  (Docket Entry No.16).  After a careful review of the entire record and the applicable law, the Court will grant respondent's motion for summary judgment and deny petitioner federal habeas relief.

I. FACTUAL AND PROCEDURAL HISTORY

　　　　　A Texas grand jury indicted petitioner in cause number 12572, alleging that he committed aggravated robbery with a deadly weapon.  *Harmon v. State*, No.14-04-00195-CR, Clerk's Record at 4.  A jury in the 253rd Judicial District Court of Chambers County, Texas heard evidence of the following, as summarized by the Fourteenth Court of Appeals for the State of Texas:

> On October 22, 2002, while Jennifer Newby washed her car at a self-service car wash, appellant approached her and asked if he could borrow her cell phone. When she responded that she did not have one, appellant went back to his car,

1

which had its hood up.  After being unable to get quarters from a change machine, Newby then asked appellant if he would exchange some of her dimes and nickels for quarters.  Appellant gave her four quarters, and later appellant asked Newby if she could give him a ride to his mother's house so that he could get money to fix his car.  Based on appellant's general appearance and conduct, Newby agreed to give him a ride.

During the ride, appellant pulled a gun on Newby and said that he was going to 'jack' her.  Appellant directed Newby to drive to an isolated area where he choked her and hit her in the head with the gun.  Newby tried to escape, but appellant hit her in the head until she passed out.

Newby woke up in the back seat of her car; some of her clothes had been removed.  She again tried to get away, but appellant pushed her toward the front seat and made her drive the car to an ATM while he rode in the back seat with the gun pointed at her.  They went through a drive-through ATM several times, and Newby withdrew cash and gave it to appellant.  Appellant then directed Newby back to the car wash, where he got out and told her not to tell the police what had happened.

Newby immediately drove to the college she attended, where a friend found her and took her to the hospital. Newby identified appellant in a photo lineup.

*Harmon v. State*, 167 S.W.3d 610, 612-13 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd).

Thereafter, the jury found petitioner guilty as charged.  *Id.*, No.14-04-00195-CR, Clerk's Record, page 81.  After a hearing, the jury assessed punishment at sixty years confinement in TDCJ-CID and a fine of $10,000.  *Id*. at 89.  Judgment was entered on February 18, 2004.  *Id*. at 96.

On direct appeal, petitioner sought relief on grounds that the evidence was factually and legally insufficient to support the conviction and that the state district court erred by denying petitioner the opportunity to stand and walk in front of the jury without subjecting him to cross-examination.  *Harmon*, 167 S.W.3d at 610.  In affirming the state district court's judgment, the intermediate state appellate court found sufficient evidence to support the conviction based on complainant's identification testimony.  *Id*. at 614.  The state appellate court further found that the state district court erred in refusing to allow petitioner to stand and walk in front of the jury without being subject to cross-examination but found the error harmless.  *Id*. at 615-16.  In his petition for discretionary review ('PDR'), petitioner sought relief on the

2

insufficiency grounds.  *Harmon v. State*, PD 1076-05.  The Texas Court of Criminal Appeals refused his PDR.  (Docket Entry No.1).

Petitioner then filed a state habeas application, seeking relief on the following grounds:

1. He was denied the effective assistance of counsel on appeal because his appellate counsel failed to:

    a. argue that he was restrained with shackles in full view of the jury,

    b. order a complete record of the voir dire for appeal; and,

    c. object on grounds that three jurors were biased;

2. The state district court erred in:

    a. sealing the voir dire selection process and refusing petitioner access to the state record;

    b. admitting the bank video of the ATM without requiring the video to be authenticated; and,

    c. allowing petitioner to be in shackles in front of the jury;

3. Petitioner was denied the effective assistance of counsel at trial because his trial counsel failed to:

    a. request the transcription of the voir dire record;

    b. object to the admissibility of the ATM video recording on grounds that it was properly authenticated;

    c. strike three venire persons, who later served on the jury, on grounds of bias; and,

    d. object to the pretrial line up and in-court identification;

4. His conviction was obtained by the action of a petit jury that was unconstitutionally selected and empanelled because three jurors on the panel stated during voir dire that would find petitioner guilty;

5. The court report failed to transcribe voir dire proceedings without an agreement of the parties;

3

6. The State utilized leading and improper photo identification tactics which led to improper in-court identification; and,

7. The prosecution engaged in misconduct by admitting an improper photo-spread and mug shot showing jail markings in court.

*Ex parte Harmon*, Application No.WR-66,745-01, pages 9-46. The state district court did not enter findings. The Texas Court of Criminal Appeals denied the application without written order on February 21, 2007. *Id*. at inside cover.

In the pending petition, petitioner seeks federal habeas relief on the following grounds:

1. Petitioner was denied the effective assistance of counsel at trial because counsel failed to:

   a. have the voir dire transcribed;

   b. object to the admissibility of the ATM video recording;

   c. strike three biased jurors; and,

   d. object to the pretrial line-up and in-court identification;

2. Petitioner was denied the effective assistance of counsel on appeal because appellate counsel failed to:

   a. raise as a point of error that petitioner had been shackled in front of the jury;

   b. request a complete record on appeal; and,

   c. raise as points of error issues regarding the three biased jurors;

3. The state district court erred in:

   a. allowing a record of the voir dire proceedings;

   b. admitting as evidence the ATM video tape;

   c. allowing petitioner to be in shackles in front of the jury; and,

   d. denying petitioner the opportunity to introduce demonstrative evidence of physical characteristics unless he subjected himself to cross-examination;

4

4.   Petitioner's conviction was obtained by the action of a petit jury that was unconstitutionally selected and empanelled because three biased jurors were allowed to sit when they should have been stricken for cause;

5.   The court reporter failed to transcribe the voir dire proceedings;

6.   The State used impermissibly suggestive tactics during the photographic line-up and an improper photograph and mug shot in court and the prosecutor engaged in misconduct by the same; and,

7.   The evidence is insufficient to support petitioner's conviction because no weapon, money, or DNA was ever recovered.

(Docket Entries No.1, No.2).

Respondent moves for summary judgment on grounds that petitioner's claim regarding demonstrative evidence is unexhausted and procedurally barred and that he has failed to meet his burden of proof and that his claims are without merit.  (Docket Entry No.15).

## II. STANDARD OF REVIEW

### A. Summary Judgment

In deciding a motion for summary judgment, a court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  The moving party bears the initial burden of informing the court of the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial.  *Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001); *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992).  Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).

5

### B. The Antiterrorism and Effective Death Penalty Act of 1996

Petitioner's federal habeas petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA'), Pub. L. No. 104-132, 110 Stat. 1214 (1996). *Lindh v. Murphy*, 521 U.S. 320 (1997).   The AEDPA, codified as amended at 28 U.S.C. § 2254(d), "substantially restricts the scope of federal review of state criminal court proceedings." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000).  Specifically, the AEDPA has "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under the law." *Bell v. Cone*, 535 U.S. 685, 122 S.Ct. 1843, 1849 (2002).

The petitioner retains the burden to prove that he is entitled to habeas corpus relief.  *Williams v. Taylor*, 529 U.S. 362 (2000).  In this case, petitioner presented claims in a petition for discretionary review and in a state habeas corpus application, which the Texas Court of Criminal Appeals denied without written order.  As a matter of law, a denial of relief by the Court of Criminal Appeals serves as a denial of relief on the merits of a claim.  *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000) (citing *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997)).  Therefore, only those claims properly raised by petitioner on a petition for discretionary review or in a state application for habeas corpus relief have been adjudicated on the merits by the state courts.

Where a petitioner's claim has been adjudicated on the merits, section 2254(d) hold that this Court shall not grant relief unless the state court's adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1),(2); *Williams*, 529 U.S. at 411-13; *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).   Courts are to review pure questions of law and mixed questions of law and fact under subsection (d)(1), and pure questions of fact under subsection (d)(2).   *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).

   "The standard is one of objective reasonableness." *Montoya*, 226 F.3d at 403-04 (quoting *Williams*, 529 U.S. at 412-13 (O'Connor, J., concurring)).   Under this standard, a federal court's review is restricted to the reasonableness of the state court's "ultimate decision, not every jot of its reasoning." *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (citing *Cruz v. Miller*, 255 F.3d 77, 86 (2nd Cir. 2001) (noting that even where a state court makes a mistake in its analysis, "we are determining the reasonableness of the state court's 'decision,' . . . not grading their papers").

   A decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413.   A decision is an unreasonable application of federal law "if the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of he prisoner's case." *Id.*   To be unreasonable, the state decision must be more than merely incorrect.   *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001).   A reversal is not required unless "the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable." *Id.*   Factual findings made by the state court in deciding a petitioner's claims are presumed correct, unless the petitioner rebuts those findings with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *abrogated on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

While Rule 56 of the Federal Rules regarding summary judgment applies generally "with equal force in the context of habeas corpus cases," *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000), it applies only to the extent that it does not conflict with the habeas rules. *Smith*, 311 F.3d at 668 (citing Rule 11 of the Rules Governing Section 554 Cases in District Courts). Therefore, section 2254 (e)(1), which mandates that findings of fact made by a state court are presumed correct, overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the non-moving party. *Id.* Unless the petitioner can "rebut[] the presumption of correctness by clear and convincing evidence" as to the state court's findings of fact, those findings must be accepted as correct. *Id.*

Courts construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519 (1972); *Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999). Thus, *pro se* pleadings are entitled to a liberal construction that includes all reasonable inferences that can be drawn from them. *Haines*, 404 U.S. at 521. Nevertheless, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992).

### III. ANALYSIS

#### A. Procedural Bar

Respondent moves for summary judgment on petitioner's claim that the state district court erred by denying petitioner the opportunity to introduce demonstrative evidence of physical characteristics unless he subjected himself to cross-examination. (Docket Entry No.15). Respondent maintains that petitioner did not exhaust such claim and this Court, therefore, is procedurally barred from reviewing it. (*Id.*).

8

Procedural default occurs where (1) a state court clearly and expressly bases its dismissal of a claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, or (2) the petitioner fails to exhaust all available state remedies, and the state court to which he would be required to petition would now find the claims procedurally barred. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991). In either instance, the petitioner is deemed to have forfeited his federal habeas claim. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). Such procedural defaults only bar federal habeas review, however, when the state procedural rule that forms the basis for procedural default was "firmly established and regularly followed" at the time it was applied to preclude state judicial review of the merits of a federal constitutional claim. *Ford v. Georgia*, 498 U.S. 411, 424 (1991).

Under the AEDPA, a petitioner "must exhaust all available state remedies before he may obtain federal habeas corpus relief." *Sones v. Hargett*, 61 F.3d 410, 414 (5th Cir. 1995). To exhaust a claim under 28 U.S.C. § 2254(b)(1) and (c) of the AEDPA, a petitioner must have presented the habeas corpus claim fairly to the state's highest court before he may bring it to federal court. *Castille v. Peoples*, 489 U.S. 346 (1989); *Fisher v. State*, 169 F.3d 295, 302 (5th Cir. 1999).

In this case, petitioner did not exhaust his state remedies with respect to the demonstrative evidence claim. Petitioner complained on direct appeal that he was denied the opportunity to stand before the jury for observation of his physical characteristics without being subjected to cross-examination. *Harmon*, 167 S.W.3d at 614-16. The state intermediate court found the error to be harmless. *Id.* Petitioner did not raise the issue in his PDR or in his state habeas application; therefore, the claim is unexhausted.

Texas prohibits successive writs challenging the same conviction except in narrow circumstances. TEX. CODE CRIM. PROC. ANN. art. 11.07,§4(a) (Vernon 2005). The Texas Court of Criminal Appeals will not consider the merits or grant relief on a subsequent habeas application unless the application contains sufficient specific facts establishing the following:

> (1) the current claims and issues have not been and could not have been presented previously in an original application or in a previously considered application because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application; or
>
> (2) by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt.

*Id.* The Texas Court of Criminal Appeals applies its abuse of the writ doctrine regularly and strictly. *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995) (per curiam).

Petitioner does not state specific facts to show that demonstrative evidence claim in the pending petition could not have been raised in his PDR or state habeas application. Furthermore, petitioner does not allege specific facts that would establish that he is innocent in any of his pleadings. Therefore, petitioner's unexhausted demonstrative evidence claim does not fit within the exceptions to the successive writ statute and would be procedurally defaulted in state court. *Coleman*, 501 U.S. at 735 n.1. Such a bar precludes this Court from reviewing petitioner's claims absent a showing of cause for the default and actual prejudice attributable to the default. *Id.* at 750.

Petitioner has been given notice through respondent's motion for summary judgment that the Court would consider a dismissal of claims under the procedural default doctrine and has been given an opportunity to respond with any argument he may have opposing dismissal in a response to the motion for summary judgment. *See Magouirk v. Phillips*, 144 F.3d

348, 359 (5th Cir. 1998).  Although petitioner filed a response to the motion for summary judgment, he does not address the default, the cause of the default, or prejudice resulting from the default in the response with respect to the state district court's failure to allow him to present demonstrative evidence of physical characteristics without being subjected to cross-examination. (Docket Entry No.16).  Instead, petitioner maintains that he presented such claim to the Texas Court of Criminal Appeals in his state habeas application.  (*Id.*).  Petitioner misstates the record.

Accordingly, petitioner's claim regarding the state court's denial of his request to present demonstrative evidence regarding his physical characteristics without being subjected to cross-examination is procedurally barred from federal habeas review.  Respondent is entitled to summary judgment on this ground.

## B. Identification Evidence

In ground eleven, petitioner complains that he was harmed by the manner in which the State conducted the pre-trial investigation.  (Docket Entry No.2).  Petitioner claims that a law enforcement officer pointed to petitioner's photograph in the array and asked complainant if he was the assailant.  Petitioner also claims that the array contained only four photographs and that petitioner's photograph was the only one that was similar to the description that complainant gave to the police.  He maintains that the pre-trial identification was so suggestive that testimony regarding complainant's identification of petitioner as her attacker from the photo array deprived him of due process.  (*Id.*).

In ground thirteen, petitioner complains of prosecutorial misconduct for presenting the improper photo array as evidence at trial and for showing a mug shot to the jury of petitioner with jail markings, which suggested a prior arrest.  (*Id.*).

11

"The Fifth Amendment affords accused individuals due process protection against evidence derived from unreliable identifications which are based on impermissibly suggestive identification." *United States v. Sanchez*, 988 F.2d 1384, 1389 (5th Cir. 1993). The constitutionality of pre-trial identification procedures utilizes a two-prong analysis. A court must determine whether the identification procedure was impermissibly suggestive, and if so, whether there was a substantial likelihood of irreparable misidentification. *Id.*; *see also Manson v. Brathwaite*, 432 U.S. 98, 113-114 (1977). To evaluate the reliability of an identification procedure, the Court considers the following five-factors: (1) the opportunity of the witness to view the assailant at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the assailant; (4) the level of certainty demonstrated by the witness; and, (5) the length of time between the crime and the confrontation. *Manson*, 432 U.S. 98, 114 (1977).

The record does not reflect any evidence that the photo array or the procedures utilized were suggestive in any way. The array is comprised of six photographs of young Caucasian males with close-cropped haircuts and similar facial features. *Harmon*, 14-04-00195-CR, Reporter's Record, Volume 4, Exhibit 27; Volume 2, page 38. None of the "mug shots" reflect jail markings that would suggest a prior arrest or criminal record. *Id*. Moreover, the record reflects no evidence as to the source of petitioner's photograph and no testimony that would implicate that he had a prior criminal record or arrest. *See United States v. Carrillo*, 20 F.3d 617, 620 (5th Cir. 1994) (adopting three-part test for determining admissibility of mug shots). Likewise, nothing in the record suggests that complainant's identification testimony was influenced in any way by the attending police officer. John McDaniel, Jr., who at the time of the offense was an investigator with Chambers County, testified that he did not assemble the photo

12

array but that it was forwarded to him.  *Id.*, Volume 2, page 38.  McDaniel showed the array to complainant who initialed petitioner's photograph to indicate that he was the man who attacked her.  *Id.* at 40.

Even if the photo array had been suggestive, complainant's identification of petitioner was nonetheless reliable.  McDaniel testified that complainant initially described her assailant to him as a white male, early twenties, blonde haircut, real short, wearing brown colored pants.  *Id.* at 58-59.  McDaniel attested that complainant said the assailant was clean-shaven and that she believed he stood approximately five feet, nine inches to five feet, eleven inches.  *Id.* at 59.  Complainant testified that she initially described petitioner to the police as a male, approximately five feet, ten inches tall with blonde hair and blue eyes.  *Id.* at 88. Petitioner claims that he is five feet, seven inches tall, with green eyes and brown hair, but the record is silent with respect to his actual physical description.  (Docket Entry No.2).

Although complainant's initial description of petitioner's hair and eye coloring and his estimated height may differ from his actual physical attributes, her description of his other physical attributes, *i.e.*, his race, age, haircut, and facial hair, were consistent with petitioner's photograph and the photographs of other men in the photo array.  Moreover, complainant testified that she had no hesitation when she picked petitioner from the line-up on October 29, 2002, a week after the assault.  *Harmon*, No.14-04-00195-CR, Reporter's Record, Volume 2 at 106, Volume 4 at Exhibit 27.  In fact, she attested that she "saw him before they even put the paper down."  *Id.*, Volume 2 at 106.

At trial, she unequivocally identified petitioner as the person she met at the car wash, the man who choked her, inflicted blows to head, and forced her to drive to the ATM and retrieve cash at gunpoint.  *Id.* at 63-64, 72-77.  Complainant testified that after she retrieved the

13

money, she drove back to the carwash, where petitioner took a towel and wiped everything off, including himself and complainant. *Id*. at 86-87. She testified that the entire incident took place over an hour around noon and during that time she had a good look at her assailant. *Id.* at 89, 93. Complainant attested that she looked her assailant straight in the face and was absolutely sure that petitioner was the man who attacked her. *Id*. at 89-90. She further attested that she had a good chance to look at her assailant at the car wash before the assault and a good chance when he was over her and when she was in the back seat of the car. *Id.* at 106.

Having considered the totality of the circumstances, the Court finds no substantial risk of misidentification to warrant exclusion of the identification testimony or the out-of-court identification. Consequently, the prosecutor engaged in no misconduct by offering the photo array into evidence, the state district court committed no error in admitting the exhibit, and defense counsel rendered no deficient performance by not objecting to the proffered exhibit.

Respondent is entitled to summary judgment on these grounds.

### C. Sufficiency of the Evidence to Support Conviction

Petitioner contends in ground fifteen that the evidence is insufficient to support his conviction because "[n]o weapon, money, or DNA was ever recovered." (Docket Entry No.1). In his memorandum in support of his petition, petitioner complains that the State presented no physical evidence that linked him to the crime. (Docket Entry No.2). Petitioner acknowledges that he was convicted on complainant's identification testimony. (*Id.*). Petitioner has attached two affidavits in support of his claim that he was not at the scene of the crime on the day in question. (*Id*.). Petitioner did not present any alibi evidence in his defense at trial.

A federal court may grant relief only if it determines that the state court decision rested on an "unreasonable application" of clearly established Federal law, as determined by the

Supreme Court, to the facts of the case. *See* 28 U.S.C. § 2254(d)(1). In its analysis of petitioner's insufficiency of evidence claim, the Fourteenth Court of Appeals set forth the applicable Supreme Court law, along with corresponding state law. *Harmon*, 167 S.W.3d at 613-14. The state appellate court noted that petitioner challenged the sufficiency of the evidence to support his aggravated robbery conviction on grounds that petitioner was identified only by complainant and no weapon, currency, fingerprints, or DNA evidence were recovered from petitioner, his clothing, or his residence. *Id.* at 614. The state appellate court found evidence of the following sufficient to support the conviction:

> There was testimony at trial by Newby that while in the car, appellant said that he was going to "jack" Newby. Appellant aimed a gun at Newby, choked her, and hit her in the head with the gun several times, causing serious injuries. Newby also testified that appellant used the gun and forced her to drive to an ATM so that she could withdraw money from her account to give to him. Newby testified that she feared for her life. Further, there are still frame photos from the ATM surveillance video that Newby testified showed her in the front seat of the car and appellant in the back seat. Newby said that the entire incident lasted about an hour and that she got a good look at appellant. Soon after the incident, Newby quickly identified appellant from a photo lineup and also said at trial that she was "[a]bsolutely sure" that appellant was the person who beat and robbed her.

*Id.* The state court further found that complainant's testimony standing alone to be sufficient to support petitioner's conviction and that even without other physical evidence, such as DNA evidence, fingerprint evidence, cash or a gun, a rational jury could have found petitioner guilty of aggravated robbery. *Id.*

In evaluating a petitioner's challenge to the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citation omitted). In making this determination, the Court must resolve all credibility issues in favor of the

15

prosecution. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).  When, as in this case, a state appellate court has reviewed the sufficiency of the evidence, that court's opinion is entitled to great weight.  *See Parker v. Procunier*, 763 F.2d 665, 666 (5th Cir. 1985).  Indeed, as indicated above, the AEDPA presumes the correctness of state court findings of fact, and places a "clear and convincing" burden on the petitioner who attempts to rebut that presumption.  *See* 28 U.S.C. § 2254(e)(1).

Generally, the testimony of a single, uncorroborated eyewitness is sufficient to support a conviction.  *United States v. King*, 703 F.2d 119, 125 (5th Cir. 1983).  Having previously found that the identification testimony was reliable, the Court finds upon an independent review of the entire record, that the state appellate court's finding that the eyewitness evidence was sufficient to support petitioner's conviction is not an unreasonable application of Supreme Court law to the pertinent facts.  Accordingly, respondent is entitled to summary judgment on this claim.

### D. Biased Jury

In ground six, petitioner claims that his conviction was obtained by the action of a petit jury that was unconstitutionally selected and empanelled.  (Docket Entries No.1, No.2). Petitioner claims that three unnamed venire persons indicated during voir dire that they were predisposed to find petitioner guilty before trial commenced.  (*Id.*).  He claims the venire persons were not stricken and were seated as jurors.  (*Id.*).  Petitioner indicates that he does not know the names or numbers of the three jurors but he "remembers that there were 3 people who stated that they could not put away their bias and give a fair trial." (Docket Entry No.2, page 29).

"[T]he right to a jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors." *Irvin v. Dowd*, 366 U.S. 717, 722 (1961).  However, jurors

are not required "to come ready to serve with a blank slate, without preconception or understanding of the real world." *Virgil v. Dretke*, 446 F.3d 598, 609 (5th Cir. 2006). "To hold that the mere existence of any preconceived notion as to guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard.  It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Irvin*, 366 U.S. at 723. Nevertheless, where a potential juror's "views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath," then he is biased and therefore, cannot constitutionally serve on a jury.  *Soria v. Johnson*, 207 F.3d 232, 242 (5th Cir. 2000) (quoting *Wainwright v. Witt*, 469 U.S. 412, 424 (1985)).

The issue of juror bias is a factual finding.  *See Patton v. Yount*, 467 U.S. 1025, 1036 (1984).  By its denial of petitioner's habeas application, the Texas Court of Criminal Appeals signified its rejection of petitioner's jury bias claim on the merits.  *See Bledsue v. Johnson*, 188 F.3d 250, 257 (5th Cir. 1999).  Petitioner has presented no evidence to rebut the presumptive factual finding of no juror bias.  *See* 28 U.S.C. § 2254(e)(1).  Although the record does not contain a transcription of the voir dire examination, the Clerk's Record contains a copy of the parties' strike lists and a list of the jurors that were selected.  *Harmon*, No.14-04-00195, Clerk's Record, pages 73-75.  The lists do not reflect the reasons that any venire person was stricken.  *Id*.  Petitioner has not identified the allegedly biased venire persons who served on the jury panel, even though the names of all the venire persons and jurors appear on lists in the Clerk's Record.  Moreover, he has not attached an affidavit from any of the jurors on the panel, attesting that other jurors were biased.  His allegation that the three biased venire persons actually served on the jury, therefore, is nothing more than pure speculation.

Finding no unreasonable application of Supreme Court law, the Court finds that respondent is entitled to summary judgment on this ground.

### E. State District Court Error

In grounds two and eight, petitioner complains that the court reporter failed to transcribe the voir dire proceedings without an agreement by the parties and the state district court erred by denying his request to open records of the voir dire.  (Docket Entries No.1, No.2).  In ground fourteen, petitioner contends the state district court abused its discretion by allowing petitioner to appear before the jury in shackles.  (*Id.*).  In ground seven, petitioner alleges the trial court erred by admitting as evidence the ATM video tape.  (*Id.*).

#### 1. Record of Voir Dire Examination

Petitioner contends that he was denied due process because the court reporter failed to record or transcribe voir dire proceedings and without a complete record of voir dire, he is unable to support his claims of jury bias and ineffective assistance of counsel.  (Docket Entries No.1, No.2).

Under Texas law, a court reporter bears an obligation to record all trial proceedings, but the complaining party must still object to the lack of a record to preserve error.  *See Valle v. State*, 109 S.W.3d 500, 508-09 (Tex. Crim. App. 2003).  In this case, the record does not reflect that the court reporter did not record the proceedings.  Even if the court reporter did not record the voir dire, neither petitioner nor his trial counsel objected that the proceedings were not recorded; therefore, they failed to preserve error as required by the Texas Rules of Appellate Procedure.

The Texas Court of Criminal Appeals, however, has recognized that a defendant's inability to access the voir dire record in a criminal case may deprive the defendant of a

18

meaningful opportunity to appeal a conviction.  *See Ex parte Torres*, Application No.WR-68800-01, 2007 WL 4306394 (Tex. Crim. App. 2007) (not designated for publication).  The Court of Criminal Appeals has also recognized that a criminal defendant may complain via a state habeas application of the omission of the voir dire examination from the trial court's records and that where the defendant has notified the appellate court of such omission, the case may be remanded to the state district court for findings regarding the recording and transcription.  *Id.*  In this case, as in *Torres*, the voir dire examination was not transcribed even though requested.  *See Harmon*, No.14-04-00195-CR, Clerk's Record, page 100 (emphasis in original).  In this case, unlike *Torres*, neither petitioner nor his appellate counsel notified the state appellate court that the voir dire examination was not included in the record.

The state district court, sitting as a habeas court, did not enter findings and the Texas Court of Criminal Appeals denied the application without written order.  Without a clear and express statement that the state procedural ground, *i.e.*, failure to preserve error, was the basis for its decision independent of the federal-law ground, this Court declines to impose the state procedural default as a bar to federal review of petitioner's claim regarding the voir dire record.  *See Foster v. Johnson,* 293 F.3d 766, 786 (5th Cir. 2002).

Nevertheless, to the extent that petitioner argues that he was entitled to a complete recording of the voir dire proceedings, he has raised a "matter purely of state, not federal law, [which] therefore is in and of itself not cognizable on federal habeas review." *See* TEX. R. APP. PROC. 13.1.  *See Polasek v. State*, 16 S.W.3d 82, 89 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (noting when confronted with apparent conflict between appellate rule requiring court reporter to record all proceedings unless excused by agreement of parties and section 52.046 of the Texas Government Code requiring court reporter to record all proceedings on request, the

appellate rule must yield).  To the extent that petitioner contends the state district court has refused his request to "unseal" the records of voir dire proceedings, petitioner fails to show that the records were sealed, that the state district court denied his request for such records, or that he was entitled to a copy of such records under federal or state law.  Moreover, the Fifth Circuit has held that the State's failure to provide adequate records of the voir dire proceedings is not itself a constitutional violation.  *Bell v. Watkins*, 692 F.2d 999, 1006 n.10 (5th Cir. 1982).

Finally, the Court notes that petitioner has not provided specific facts supporting his claim that he was prejudiced by the absence of a record of voir dire.  Where a federal petitioner does not provide more than conclusory allegations as to why the absence of a transcription prejudiced his appeal, he has not demonstrated that a constitutional violation had occurred or that he was entitled to habeas relief.  *Mullen v. Blackburn*, 808 F.2d 1143, 1146 (5th Cir. 1987).

Petitioner has not demonstrated that the state court's denial of his claim regarding the court reporter's failure to record or transcribe voir dire proceedings was contrary to or an unreasonable application of clearly established federal law.  Therefore, the Court will grant respondent's motion for summary judgment on this claim and deny petitioner habeas relief.

## 2. Shackles

Petitioner claims that he was shacked before the jury during the punishment phase of trial and that his trial counsel objected even though no objection was required.  (Docket Entry No.1, No.2).  In support of this claim, petitioner refers the Court to a discussion among the attorneys and the judge following a conference regarding the jury charge.  *See Harmon*, No.14-04-00195, Reporter's Record, Volume 2, page 130.  The record reflects that the prosecutor informed the trial judge that he was going to bring the State's witnesses into the courtroom for

final argument. *Id.* at 129.   The trial judge asked petitioner's counsel if he had an objection to a

the witnesses being in the courtroom for final arguments once the parties had rested.   *Id.*

Petitioner's trial counsel asked whether the witnesses were going to testify at the punishment

hearing, to which the prosecutor responded: "It doesn't matter, Judge.   We can bring him in here

in shackles in front of the jury and it doesn't matter, Judge." *Id.* at 129-30.   Petitioner's trial

counsel argued: "The rule matters." *Id.* at 130.   The prosecutor continued to argue otherwise and

the trial judge asked for case law to support the State's argument.   *Id.*   After the jury returned its

guilty verdict, the state district court released the jury and ordered jurors to return the following

day for the punishment hearing.   *Id.* at 159.

      The record of the punishment hearing, which was held the next day, reflects that

petitioner was present in the courtroom.   *Id.*, Volume 3, page 4.   The record does not reflect that

petitioner was shackled or that his trial counsel raised an objection regarding shackles.   *Id.*

      While defendants are entitled to "physical indicia of innocence in their trials,"

however, a "brief and inadvertent exposure" to jurors of a defendant in handcuffs is not "inherently

prejudicial" and the defendant bears the burden of affirmatively demonstrating prejudice. *United

States v. Escobar*, 674 F.2d 469, 479-80 (5th Cir. 1982) (citation omitted).   The fact that the

issue of shackles was never broached during petitioner's punishment hearing strongly suggests

that nothing of an untoward and improper character occurred.   Further, petitioner has not

corroborated this claim with affidavits or declarations of third persons, such as members of the

petit jury.   Accordingly, his conclusory and unsupported claim fails to present a cognizable basis

for relief.   *See Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) (holding "[a]bsent evidence in

the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his

*pro se* petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value").

Respondent is entitled to summary judgment on this claim.

### 3. Admission of ATM Video Tape

Petitioner complains that the state district court abused its discretion in admitting "a very blurry" video tape "of what was allegedly complainant and petitioner" at an ATM machine because under Rule 403 of the Texas Rules of Evidence, the probative value of the tape was outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. (Docket Entries No.1, No.2). Petitioner claims the silent bank video tape was inaccurate because the withdrawal receipt from the machine differed by an hour from the video tape. (*Id.*).

A federal habeas court may consider the propriety of state court evidentiary rulings only if there has been a constitutional infraction that renders the entire trial fundamentally unfair. *Trussell v. Estelle*, 699 F.2d 256, 259 (5th Cir. 1983). "[W]hen a state court admits evidence that is 'so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief.'" *Dawson v. Delaware*, 503 U.S. 159, 179 (1992) (quoting *Payne v. Tennessee*, 501 U.S. 808, 825 (1991)). In conducting this analysis, it is irrelevant whether the evidence was correctly admitted pursuant to state law. *See Estelle v. McGuire*, 502 U.S. 62 (1991). Rather, the sole inquiry is whether the admission violated the Constitution. *Id.* at 68. Only when the wrongfully admitted evidence has played a crucial, critical, and highly significant role in the trial will habeas relief be warranted. *Andrade v. McCotter*, 805 F.2d 1190, 1193 (5th Cir. 1986).

The record indicates that the silent video tape was relevant and probative of the contested issues at trial, *i.e.*, the identity of the armed robber who assaulted complainant and the

robbery.  The state district court admitted a copy of the tape over the objection of petitioner's trial counsel that the tape was not properly authenticated.[1]  *Harmon*, No.14-04-00195-CR, Volume 2, pages 41-42.  Outside the jury's presence, complainant identified each frame of the video tape. *Id*. at 47-48.  She testified that the video frames fairly and accurately depicted the scene as it occurred on October 22, 2002.  *Id*. at 45-51.  Petitioner's trial counsel then objected that unfair prejudice substantially outweighed the probative value of the tape.  *Id*. at 51.  The state district court overruled the objection because complainant had identified herself in the tape.  *Id*. at 52. The video tape was shown to the jury while complainant testified that she appeared in each frame talking with petitioner, who was seated in the back seat pointing a gun at her as she retrieved money from the ATM machine.  *Id*. at 78-81.

Petitioner has not shown that the admission of the video tape was "so unduly prejudicial that it rendered the trial fundamentally unfair," particularly in light of complainant's extensive testimony.  Petitioner also fails to show that the state court's denial of this claim was contrary to or an unreasonable application of federal law as required by the AEDPA.  *See Miller v. Dretke*, 420 F.3d 356 (5th Cir. 2005).  Accordingly, respondent is entitled to summary judgment on this ground.

## F. Ineffective Assistance of Counsel at Trial

In grounds three, five, nine and twelve, petitioner contends he was denied the effective assistance of counsel at trial.  (Docket Entries No.1, No.2).  Petitioner complains in ground three that counsel failed to request the transcription of voir dire; in ground five, he

---

[1] Under state law, "[t]he trial court's analysis of the admissibility of a silent videotape is the same as it is for still photographs."  *Alvarado v. State*, 912 S.W.2d 199, 213 (Tex. Crim. App. 1995).  "Generally, when verbal testimony describing a scene is admissible, then a photograph or videotape of that scene would also be admissible."  *Price v. State*, 870 S.W.2d 205, 208 (Tex. App.—Fort Worth, 1994) (citing *Ramirez v. State*, 815 S.W.2d 636, 647 (Tex. Crim. App. 1991), *affirmed*, 887 S.W.2d 949 (Tex. Crim. App. 1994)).

complains that counsel failed to object to the admissibility of the ATM video recording; in ground nine, he complains that counsel failed to strike the three biased jurors; and in ground twelve, petitioner complains that counsel failed to object to the pretrial line-up and in-court identification.  (*Id.*).

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to effective assistance of counsel.  U.S. CONST. amend. VI.  A federal habeas corpus petitioner's claim that he was denied effective assistance of trial counsel is measured by the standard set out in *Strickland v. Washington*, 466 U.S. 668 (1984).  To prevail on an ineffective assistance of counsel claim, petitioner must establish that his counsel's performance was deficient and that the deficiency prejudiced his defense.  *Ogan v. Cockrell*, 297 F.3d 349, 360 (5th Cir. 2002) (citing *Strickland*, 466 U.S. at 692)).  The failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.  *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

Counsel's performance is deficient when the representation falls below an objective standard of reasonableness.  *Ogan*, 297 F.3d at 360.  Judicial scrutiny of counsel's performance must be "highly deferential," indulging in a "strong presumption" that "trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy."  *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996).  To overcome this presumption, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1993).  Mere "error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  *Strickland*, 466 U.S. at 687-90.  A deficiency in counsel's performance, standing alone, does not equal ineffective assistance of counsel if no actual prejudice is demonstrated.

24

Counsel's deficient performance results in actual prejudice when a reasonable probability exists "that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Confidence in the outcome of the trial is undermined when counsel's deficient performance renders "the result of the trial unreliable or the proceeding fundamentally unfair." *Pratt v. Cain*, 142 F.3d 226, 232 (5th Cir. 1998) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Pratt*, 142 F.3d at 232 (quoting *Lockhart*, 506 U.S. at 372).

A claim of ineffective assistance of counsel presents a mixed question of law and fact. *Valdez v. Cockrell*, 274 F.3d 941, 946 (5th Cir. 2001). Because petitioner's ineffective-assistance claims were previously considered and rejected on state habeas corpus review, the state court's decision on those claims will be overturned only if it is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Petitioner fails to show that his trial counsel rendered constitutionally deficient performance or that he suffered any prejudice from counsel's performance. Contrary to petitioner's complaint, his trial counsel objected to the admission of the video tape on grounds that it was not properly authenticated and that it was prejudicial. *Id.*, Reporter's Record, Volume 2, pages 41-42, 51. Counsel also objected to the admission of the photo array on the ground that complainant had marked her initials and the date by petitioner's photograph. *Id.*, page 39. As previously discussed, the record contains no evidence to show that the photo array was suggestive or that the identification procedure was tainted; therefore, counsel's performance was not deficient for failing to object to the admission of the photo array or to the pre-trial procedures.

Likewise, petitioner's trial counsel did not render ineffective assistance because he did not move to strike the three allegedly biased venire persons.  As previously discussed, petitioner has not shown, and the record does not reflect, that three biased jurors sat in judgment of petitioner on the jury panel.  A counsel's failure to raise meritless objections is not ineffective assistance of counsel.  *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994).

Finally, petitioner fails to show that his trial counsel's performance was deficient because counsel did not have the voir dire examination transcribed.  Under the Texas Rules of Appellate Procedure, the appellant must request in writing that the official reporter prepare the reporter's record at or before the time for perfecting the appeal.  TEX. R. APP. PROC. 34.6.  Petitioner's trial counsel withdrew as counsel and the state district court appointed another attorney as appellate counsel before petitioner filed his notice of appeal.  *Harmon*, No.14-04-00195-CR, Clerk's Record, pages 91-98.  Therefore, petitioner's trial counsel had no duty to request a transcription of the trial record.

Moreover, petitioner fails to show that he was prejudiced in any way by his trial counsel's performance.  Accordingly, respondent is entitled to summary judgment on this ground.

### G. Ineffective Assistance of Counsel on Appeal

In grounds one, four, and ten, petitioner contends he was denied the effective assistance of counsel on appeal.  (Docket Entries No.1, No.2).  In grounds one and ten, respectively, he complains that his appellate counsel failed to raise as grounds on appeal that petitioner had been shackled in front of the jury and that he had been subjected to jury bias; in ground four, he complains that his appellate counsel failed to request a complete record.  (*Id.*).

An accused is constitutionally entitled to effective assistance of counsel on direct appeal as a matter of right.  *Evitts v. Lucey*, 469 U.S. 387 (1985).  Claims of ineffective assistance of counsel are determined by the same standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  *Smith v. Murray*, 477 U.S. 527 (1986).  To establish that appellate

26

counsel's performance was deficient in the context of an appeal, petitioner must first show that his attorney was objectively unreasonable in failing to find arguable issues to appeal, *i.e.*, counsel unreasonably failed to discover non-frivolous issues and raise them. *Smith v. Robbins*, 528 U.S. 259, 285 (2000).  Petitioner must then demonstrate that he was actually prejudiced by his counsel's errors. *Id.* at 285-286; *see also Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000).  To establish actual prejudice, petitioner must show a "reasonable probability" that, but for his counsel's deficient performance, "he would have prevailed on appeal." *Robbins*, 528 U.S. at 285.

Petitioner fails to show either prong of the *Strickland* test with respect to his appellate counsel.  As previously discussed, petitioner has presented no evidence, and the record reflects no evidence, that petitioner appeared before the jury in shackles or that three biased jurors sat on the jury panel that convicted him.  Appellate counsel is not required to present patently frivolous and arguments on appeal, or even to present all non-frivolous points that could have been raised. *Williams v. Collins*, 16 F.3d 626, 635 (5th Cir. 1994).  Moreover, the record reflects that appellate counsel requested a transcription of the voir dire examination. *Harmon*, No.14-04-00195-CR, Clerk's Record, pages 99-103.  The record does not reflect that appellate counsel modified his request.  Even if appellate counsel subsequently modified the request for transcription, petitioner fails to show that he was prejudiced by counsel's failure to obtain a copy of the voir dire examination because his claims regarding bias are conclusory and speculative.

Accordingly, respondent is entitled to summary judgment on petitioner's ineffective assistance of counsel claims.

## IV. CERTIFICATE OF APPEALABILITY

A certificate of appealability from a habeas corpus proceeding will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  This standard "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or

that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations and citations omitted). Stated differently, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*; *Beazley v. Johnson*, 242 F.3d 248, 263 (5th Cir. 2001). On the other hand, when denial of relief is based on procedural grounds, the petitioner must not only show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Beazley*, 242 F.3d at 263 (quoting *Slack*, 529 U.S. at 484); *see also Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000). A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). The Court has determined that petitioner has not made a substantial showing of the denial of a constitutional right. Therefore, a certificate of appealability from this decision will not issue.

## V. CONCLUSION

Finding no unreasonable application of clearly established federal law in the record of the state habeas proceeding, the Court ORDERS the following:

1.   Respondent's motion for summary judgment (Docket Entry No.15) is GRANTED.

2.   Petitioner's claims against respondent are DENIED, and the habeas action is DISMISSED with prejudice.

3.   All pending motions, if any, are DENIED.

4.   A certificate of appealability is DENIED.

SIGNED at Houston, Texas, this 17th day of July, 2008.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE